Case 4:16-cv-01387   Document 32   Filed in TXSD on 07/27/16   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
July 27, 2016
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DAMIR TOKIC, § | |
| § | |
| Petitioner, § | |
| VS. § | CIVIL ACTION NO. 4:16-CV-1387 |
| § | |
| JESSICA TOKIC, § | |
| § | |
| Respondent. § | |

## MEMORANDUM OPINION AND ORDER

**I.     INTRODUCTION**

This case involves the alleged wrongful removal of two minor children, K.T. and L.T., from their habitual residence in France,[1] pursuant to the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention")[2] and the International Child Abduction Remedies Act ("ICARA"), 22 U.S.C. § 9003 *et seq*. More specifically, the petitioner, Damir Tokic ("the petitioner"), has initiated an action in this Court, pursuant to the Convention, seeking the return of his twelve year old and ten year old sons, asserting that on or about April 1, 2016, Jessica Tokic, their mother ("the respondent"), abducted them from France and brought them to Texas where they now remain. The petitioner claims that he did not consent or acquiesce to the removal of the children from France to the United States. The respondent, however, denies that she violated the Convention, asserting, *inter alia*, that her removal of the children was necessary in order to protect them from a grave risk of harm and/or an intolerable situation.

On June 6, 2016, the Court took possession of all passports issued in the children's names and ordered that the children not be removed from the jurisdiction of the Court. (*See* Dkt. No.

---

[1] The respondent does not dispute that France is the country of habitual residence of the two minor children as she stipulated to the same during the full hearing on the merits held on July 13, 2016.
[2] Hague Convention on the Civil Aspects of International Child Abduction, October 25, 1980. T.I.A.S No. 11670, 1988 WL 411501, *reprinted in* 51 Fed. Reg. 10,494 (March 26, 1986).

12.) The Court also issued a temporary order, setting parameters for parental access to the children pending a full hearing on the merits. *Id.*

On July 13, 2016, a full hearing on the merits was held in this Court in the above-captioned matter, during which the Court received documentary evidence and considered sworn testimony. After having considered the evidence, testimony, arguments of counsel and the applicable law, the Court finds that the children were wrongfully removed from France and, for the reasons set forth below, ORDERS their immediate return to that country.

## II.     FACTUAL BACKGROUND

The Court makes the following procedural and factual findings.[1] The petitioner and the respondent were married in Houston, Texas on January 12, 2004, and remain legally married. They are the parents of K.T., a twelve year old boy born on May 10, 2004, in Houston, Texas, and L.T., a ten year old boy born on March 27, 2006 in Houston, Texas. K.T. and L.T. are eligible for return to France under the Convention. In November 2009, the family moved from Houston, Texas to France, for the petitioner's employment. The petitioner and respondent agreed that, at the end of one year, they would decide whether to return to the United States. The petitioner, therefore, requested a leave of absence from his position at the University of Houston-Downtown. In 2009, the family shipped their cars, along with their possessions to France. They did not leave any real property or other possessions in the United States. The petitioner accepted a position with a university in Rennes. Thereafter, the boys were enrolled in and attended French-speaking schools and engaged in other extracurricular activities in France.

---

[1] The Court received sworn testimony from the respondent, her expert, Dr. Robert Knapick, a family therapist, and her sister. The Court also received sworn testimony from the petitioner, his brother and sister-in-law as well as both children. The parties also submitted multiple exhibits to the Court.

After a year of residing in France, the petitioner resigned from the University of Houston-Downtown and allowed his permanent residency status in the U.S. to lapse. In 2014, after the petitioner accepted the French equivalent of a tenure-track position at a university in Monaco, the family relocated to Nice. There, the family purchased a townhome and the respondent applied for various jobs. The petitioner and the children resided in France as citizens of the European Union.[3] The respondent was able to legally reside there as the spouse of a citizen of the European Union. The petitioner and respondent had a shared intent that K.T. and L.T. remain in France at least during the course of the petitioner's employment. Both K.T. and L.T. attended school in France up until the 2015 – 2016 school term and remain enrolled there for the 2016 – 2017 school term.

On April 1, 2016, the respondent removed the children from France to Montgomery County, Texas, without the petitioner's knowledge or consent. On or about April 3, 2016, the respondent informed the petitioner that she had retained airline tickets with a purported return departure date of April 21, 2016. However, instead of departing Montgomery County, Texas on April 21, 2016, the respondent, on or about April 22, 2016, filed a petition for custody of the children in County Court at Law No. 3 in Montgomery County, Texas. On May, 17, 2016, the petitioner filed a verified petition for immediate return of the children under the Convention. (*See* Dkt. No. 1).

K.T. and L.T. are currently located in The Woodlands, Montgomery County, Texas, a city within the jurisdiction of the Southern District of Texas, Houston Division. *See* 28 U.S.C. § 124(b)(2). The Court has taken judicial notice of the relevant foreign law under the French Civil Code pursuant to Article 14 of the Convention.

---

[3]Since Croatia had joined the European Union, the family was able to live and work in France indefinitely under the petitioner's status as a citizen of Croatia.

## III. ANALYSIS AND DISCUSSION

The Convention governs civil proceedings filed in signatory countries for the recovery of abducted children during domestic disputes. *See Abbott v. Abbott*, 560 U.S. 1, 8, 130 S. Ct. 1983, 1989, 176 L. Ed.2d 789 (2010). Both the United States and France are signatories to the Convention. The purpose underlying the Convention is twofold: (1) "to secure the prompt return of children wrongfully removed to or retained in any Contracting State"; and (2) "to ensure that rights of custody and of access under the law of one Contracting State are effectively respected in the other Contracting States." *Id.* (quoting Convention, art. 1). "The Convention provides that a child abducted in violation of 'rights of custody' must be returned to the child's country of habitual residence, unless certain exceptions apply." *Abbott*, 560 U.S. at 5, 130 S. Ct. at 1987.

The ICARA establishes the procedures for the implementation of the Convention in the United States. *Abbott*, 560 U.S. at 9, 130 S. Ct. at 1989. Federal district courts and state courts "have concurrent original jurisdiction of actions arising under the Convention." 22 U.S.C. § 9003(a). Specifically, the ICARA provides that "[a]ny person seeking . . . the return of a child . . . . may do so by commencing a civil action by filing a petition for the relief sought in any court which has jurisdiction of such action and which is authorized to exercise its jurisdiction in the place where the child is located at the time the petition is filed." *Id.* § 9003(b). Congress has expressly declared that the provisions in the ICARA "are in addition to and not in lieu of the provisions of the Convention." *Id.* § 9001(b)(2). In this case, it is undisputed that K.T. and L.T. were located in The Woodlands, Montgomery County, Texas, a city within the jurisdiction of this Court when the petitioner filed his petition for return.

"When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must 'order the return of the child forthwith,' unless certain exceptions apply." *Abbott*, 560 U.S. at 9, 130 S. Ct. at 1989 (citing Convention, arts. 4, 12). A removal or retention is wrongful when: (1) "it is in breach of rights of custody attributed to a person . . . either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention;" and (2) "at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention." Convention art. 3. The Convention defines "rights of custody [to] include rights relating to the care of the person of the child and, in particular, the right to determine the child's place of residence." Convention art. 5(a). Therefore, to establish his claim for wrongful removal or retention, the petitioner must prove the following elements by a preponderance of the evidence: (1) "the respondent removed or retained the child somewhere other than the child's habitual residence"; (2) the removal or retention violated the petitioner's 'rights of custody' under the habitual residence nation's laws"; and (3) "at the time of removal or retention, those rights were actually [being] exercised, either jointly or alone, or would have been so exercised but for the removal or retention." *See Larbie v. Larbie*, 690 F.3d 295, 307 (5th Cir. 2012) (internal citations omitted).

Nevertheless, the Court is "not bound to order" the return of a child if the party opposing the return establishes, *inter alia*, that "there is a grave risk that [the] return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." Convention art. 13 (b). The party opposing the return must establish such a defense by "clear and convincing evidence." *Sealed Appellant v. Sealed Appellant*, 394 F.3d 338, 343 (5th Cir. 2004); *see also* 22 U.S.C. § 9003(e)(2)(A).

This Court is of the opinion that the petitioner has satisfied all three elements of wrongful removal by a preponderance of the evidence and that the respondent has failed to establish her affirmative defenses by applicable standards.

### A.     Where is the Country of Habitual Residence?

When evaluating a claim under the Convention, the Court's "inquiry is limited to determining whether or not the child has been wrongfully removed from [his or her] country of 'habitual residence.'" *Berezowsky v. Ojeda*, 765 F.3d 456, 465 (5th Cir. 2014), *cert. denied*, 135 S. Ct. 1531, 191 L. Ed. 2d 559 (2015) (internal citations and quotations omitted).  The Court must not engage in an assessment of the underlying custody dispute.  *Id.*  Thus, the threshold question now before the Court in this alleged wrongful removal case necessarily becomes whether France was K.T. and L.T.'s country of habitual residence.  *Larbie*, 690 F.3d at 310 (citing *Mozes v. Mozes*, 239 F.3d 1067, 1072 (9th Cir. 2001)).  This Court answers in the affirmative.

The term "habitual residence" is not defined by the Convention.  *Larbie*, 690 F.3d at 310 (citing *Mozes*, 239 F.3d at 1071; *see* Convention, arts. 1 - 45 (providing no definition for habitual residence)).  Nor does the ICARA provide any guidance.  *See* 22 U.S.C. § 9002.  Thus, courts have created various definitions and frameworks for determining a child's country of habitual residence.  *See, e.g.*, *Mozes*, 239 F.3d at 1080 – 81(noting that a child's country of habitual residence cannot be altered without the acquiescence of the noncustodial parent); *Robert v. Tesson*, 507 F.3d 981, 989 - 95 (6th Cir. 2007) (reasoning that principal importance should be placed on the "child's experiences," as established by the child's adaptation and "degree of settled purpose," without accounting for the parents' "subjective intent.")

More recently, the Fifth Circuit "joined 'the majority' of circuits that 'have adopted an approach that begins with the parents' intent or settled purpose regarding their child's residence.'" *Larbie*, 690 F.3d at 310. "This approach does not ignore the child's experience, but rather gives greater weight to the parents' subjective intentions relative to the child's age." *Id.* To this end, the Fifth Circuit has reasoned that a court's "inquiry into a child's habitual residence is not formulaic; rather it is a fact-intensive determination that necessarily varies with the circumstances of each case." *Id.* (quoting *Whiting v. Krassner*, 391 F.3d 540, 546 (3d Cir. 2004)). When determining a child's country of habitual residence, the analysis must center on "the parents' shared intent or settled purpose regarding their child's residence." *Larbie*, 690 F.3d at 310 (quoting *Nicolson v. Pappalardo*, 605 F.3d 100, 104 & n. 2 (1st Cir. 2010)). Hence, the threshold test becomes "whether both parents intended for the children to 'abandon the [habitual residence] left behind.'" *Larbie*, 690 F.3d at 310 – 11 (internal citations omitted). In the absence of such shared intent, "prior habitual residence should be deemed supplanted only where 'the objective facts point unequivocally' to this conclusion." *Id.* (citing *Mozes*, 239 F.3d at 1082).

Personal uncertainties about abandoning or leaving the habitual residence or establishing a new habitual residence, including doubts about continuing the marriage, however, are generally insufficient to negate shared parental intent. *Berezowsky*, 765 F.3d at 466; *Mozes*, 239 F.3d at 1076; *Feder v. Evans–Feder*, 63 F.3d 217 (3d Cir. 1995). One parent's reservations do not negate shared intent. *Mozes*, 239 F.3d at 1077.

During the course of the hearing on this matter, the parties stipulated or conceded that France is the children's country of habitual residence. Notwithstanding the parties' stipulation, however, the preponderance of the evidence also establishes that both parents shared the intent

that France was their children's habitual residence prior to the respondent's removal of the children, K.T. and L.T., on April 1, 2016. The petitioner has clearly established that in November 2009, he and the respondent shared an intention to abandon their home in Houston, Texas and move their children to France where they have remained for well over seven years until the children were removed to the United States by the respondent on April 1, 2016. In 2009, the family shipped their cars along with all of their possessions to France. They did not leave any real property or other possessions in the United States. The petitioner accepted a position with a university in Rennes. The boys were enrolled in and attended French-speaking schools, played sports such as soccer and engaged in other extracurricular activities. After a year of residing in France, the petitioner resigned from the University of Houston-Downtown and thereby allowed his U.S. permanent residency status to lapse. In 2014, after the petitioner accepted the French equivalent of a tenure-track position at a university in Monaco, the family relocated to Nice. There, the family purchased a townhome and the respondent applied for jobs. It is undisputed that the family has continuously resided in France since 2009. Accordingly, the Court concludes that the petitioner and respondent's mutual decision to move their children from Houston, Texas to France indicates a shared parental intent in 2009 to make France their children's country of habitual residence.

      **B.**    **Was the Removal in Breach of the Petitioner's "Rights of Custody"?**

The Court also determines that the respondent's removal of the children to the United States was a breach of the petitioner's "rights of custody" under the laws of France. The Convention defines "rights of custody" to "include rights relating to the care of the person of the child, and, in particular, the right to determine the child's place of residence." Convention, art. 5(a). The Convention does not require any sort of formal custody order or private legal

agreement as rights of custody may exist by mere operation of law. Convention, art. 3. The term "rights of custody" is to be broadly construed so as to bring as many cases as possible under the purview of the Convention. *Abbott*, 560 U.S. at 16, 130 S. Ct. at 1993; *Altamiranda Vale v. Avila*, 538 F.3d 581, 586 (7th Cir. 2008). The petitioner is not required to have sole or exclusive custody over the children and, in fact, the Convention recognizes that custody rights can be "decreed jointly or alone." *Abbott*, 560 U.S. at 11, 130 S. Ct. at 1990. Whether the petitioner's rights of custody have been breached must be determined based "under the law of the State in which the child was habitually resident immediately before the removal or retention." Convention art. 3(a); *Larbie*, 690 F.3d at 307 (whether removal or retention violated petitioner's rights of custody must be established "under the habitual residence nation's laws"); *see also Sealed Appellant*, 394 F.3d at 343 (reasoning that in the absence of a formal custody agreement between the parties, courts are to apply the laws of the country of the children's habitual residence to determine if the petitioner has "rights of custody" within the Convention's meaning that have been violated).

The petitioner has rights of custody under French law, including rights relating to the care of K.T. and L.T. as well as the right to determine their residence. *See* Dkt. No. 1, Ex. 3 (affidavit providing guidance on French law). Specifically, under Article 371-1 of the French Civil Code, parental authority is defined as "a set of rights and duties whose finality is the welfare of the child." (*See* Pet. for Return of Children, Dkt. No. 1, Ex. 3 at 22). "It is vested in the father and mother until the majority or emancipation of the child in order to protect him in his security, health and morality, to ensure his education and allow his development, showing regard to his person." (*Id.*). Article 371-3 further provides that "[a] child may not, without the

permission of the father and mother, leave the family home and he may be removed from it only in cases of necessity as determined by statute." (*Id.*).

Although the petitioner and the respondent possess joint parental authority under French law, the Convention, nevertheless, provides that removal is wrongful, when despite both parents' joint custodial rights, one parent's removal of the children breaches those rights or interferes with the other parent's ability to exercise those rights. Convention, art. 3. The preponderance of the evidence establishes that the removal of K.T. and L.T. from France infringed on the petitioner's rights of custody and constituted a breach thereof. Having established that the petitioner possessed rights of custody that were breached at the time of the children's wrongful removal, the petitioner need now only establish that he was exercising those rights at the time of the removal.

### C. Was the Petitioner Exercising "Rights of Custody" Prior to the Children's Wrongful Removal?

The Court concludes that the petitioner has established by a preponderance of the evidence that he was exercising his rights of custody prior to the children's removal from France. Neither the Convention nor the ICARA define what constitutes an "exercise" of rights of custody. Courts have, however, interpreted the term broadly and employed its simplest, ordinary meaning so as to avoid delving into consideration of the underlying custody dispute. *Sealed Appellant*, 394 F.3d at 344. The Fifth Circuit has noted that it is "relatively easy" to show that a petitioner was exercising his rights of custody, either jointly or alone, at the time of removal or would have exercised them but for the removal or retention. *See Larbie*, 690 F.3d at 307 (citing Elisa Pérez–Vera, Explanatory Report ¶ 73, in 3 Hague Conference on Private Int'l Law, Acts and Documents of the Fourteenth Session, Child Abduction 426, 428 (1982) ("Explanatory

Report")).[4]  It has further reasoned that "in the absence of a ruling from a court in the child's country of habitual residence, when a parent has custody rights under the laws of that country, even occasional contact with the child constitutes 'exercise' of [custody] rights." *Sealed Appellant*, 394 F.3d at 345.  "To show failure to exercise custody rights, the removing parent must show the other parent has abandoned the child." (*Id.*).

The preponderance of the evidence establishes that the petitioner, as the live-in joint custodian and guardian of the children in France, exercised his rights of custody on a daily basis by providing for the general welfare of the children, including, *inter alia*, taking them to school, helping them with their studies, taking them to soccer games and/or engaging them in other extracurricular activities.

### D.    The Respondent's Affirmative Defenses[5]

Once a petitioner shows by a preponderance of the evidence that the removal or the retention of the child was wrongful, the burden shifts to the respondent to prove any applicable affirmative defenses.  *See* 22 U.S.C. § 9003(e).  "When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must 'order the return of the child forthwith,' unless certain exceptions apply."  *Abbott*, 560 U.S. at 9, 130 S. Ct. at 1989 (citing Convention, arts. 4, 12).  The Convention recognizes several narrow exceptions

---

[4] "Elisa Pérez–Vera was the official Hague Conference reporter, and her explanatory report is 'recognized by the Conference as the official history and commentary on the Convention and is a source of background on the meaning of the provisions of the Convention available to all States becoming parties to it.' "  *Mozes*, 239 F.3d at 1070 n. 3 (citations omitted); *see also Tesson*, 507 F.3d at  988 n. 3 (noting that the Report is regarded as "an authoritative source for interpreting the Convention's provisions" (citations omitted)).

[5] In her answer, the respondent does not allege consent or acquiescence as an affirmative defense.  In her testimony, however, she attempts to assert, as a defense, that the petitioner consented or subsequently acquiesced in the removal of the children from France or the retention of them here in Texas.  The overwhelming evidence in the record, however, establishes that the petitioner never consented to or acquiesced in the respondent's removal of the children from France.

or defenses to the return of children wrongfully removed or retained from their country of habitual residence. 22 U.S.C. § 9003(e)(2)(A, B); Convention, arts. 12, 13, 20.

In her answer to the petition, the respondent has pleaded the following affirmative defenses under the Convention: (1) that the return of the children would expose them to a grave risk of physical or psychological harm or place them in an intolerable situation; (2) that the children object to returning to France and have reached an age and degree of maturity such that the Court should consider their views; and (3) that the return of the children would not be permitted by the fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms.

### 1. Grave risk of physical or psychological harm exception

The respondent has specifically alleged that she opposes the return of the children to the petitioner in France because a grave risk exist that their return would expose them to physical or psychological harm or otherwise place them in an intolerable situation. (*See* Dkt. No. 19, Ex. 1.) A respondent who opposes the return of a child and asserts the "grave risk" affirmative defense has the burden of establishing by clear and convincing evidence "that there is a grave risk that the child's return would expose the child to physical or psychological harm or otherwise place the child in an intolerable situation." 22 U.S.C. § 9003(e)(2)(A); Convention, art. 13(b). Even if a respondent establishes the grave risk exception, "a federal court has 'and should use when appropriate' the discretion to return a child to his or her place of habitual residence 'if return would further the aims of the Convention.' " *England*, 234 F.3d at 271 – 72 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1067 (6th Cir. 1996)); *see also* U.S. State Dep't., *Hague Int'l Child Abduction Convention; Text and Legal Analysis*, 51 Fed. Reg. 10503 – 10516, 10509 (March 26, 1986) ("*Hague Convention Analysis*") ("[A] finding that one or more of the exceptions provided

by Article[s] 13 and 20 are applicable does not make refusal of a return order mandatory . . . [C]ourts retain the discretion to order the child returned even if they consider that one or more of the exceptions applies.").

A high threshold is required to establish the grave risk of harm defense. *See e.g., Silverman v. Silverman*, 338 F.3d 886, 900 - 01 (8th Cir. 2003); *Friedrich*, 78 F.3d at 1069. A respondent objecting to a child's return must establish "that the risk to the child is grave, not merely serious." *Hague Convention Analysis*, 51 Fed. Reg. at 10510. "A grave risk of harm" within the meaning of the Convention has generally been held to be established "when return of the child puts the child in imminent danger *prior* to the resolution of the custody dispute-*e.g.*, returning the child to a zone of war, famine, or disease" or "in cases of serious abuse or neglect, or extraordinary emotional dependence, when the court in the country of habitual residence, for whatever reason, may be incapable or unwilling to give the child adequate protection." *Friedrich*, 78 F.3d at 1069.

Here, the respondent contends that the petitioner was emotionally, verbally and physically abusive to her and their children. (*See* Dkt. No. 19, Ex. 1). The respondent's testimony and actions, however, coupled with the *in camera* testimony elicited from the children, tends to weaken or undermine the authenticity of her claims of abuse. This finding is also bolstered by the fact that: (1) the respondent repeatedly informed the petitioner that she would let him see the children whenever he wants if he would just agree to let them remain in Texas; and (2) the respondent agreed to let the petitioner have extended, unsupervised visits with the children during the pendency of this case and made no objection to him picking them up from their place of residence here in Texas. (*See* Dkt. Nos. 12, 28, Exs. 5 & 6). Further, K.T. and

L.T. both testified that they enjoyed being with the petitioner and that he never physically abused or mistreated them or the respondent in their presence.

The fact of the matter is that the overwhelming evidence in the record fails to support the respondent's claims concerning the petitioner's abusive behavior.  While the allegations made against the petitioner present serious concerns, the respondent has not presented any actual evidence that the petitioner has a history of abusing the children or that he actually abused them.  Although both parties admit that on occasion they engaged in arguments in the presence of their sons, the evidence does not support the view that one party was any more overbearing or aggressive than another, or that any physical altercation ever ensued.  Based on the evidence presented, the respondent has not shown by clear and convincing evidence that the children would face a grave risk of harm or be subjected to an intolerable situation if they were required to return to France.  *See Altamiranda Vale*, 538 F.3d at 587 (noting that the clear and convincing evidence burden is "demanding" and that the respondent failed to meet that burden).  Nor has the respondent proffered any indication, beyond mere supposition, that the courts in France may be incapable or unwilling to provide the children with adequate protection.

### 2.  Objections to return/age and degree of maturity exception

The respondent has alleged that K.T. and L.T. object to returning to France and have reached an age and degree of maturity such that the Court should consider their views and not return them to the petitioner in France.  (*See* Dkt. No. 19, Ex. 1).  Article 13 of the Convention authorizes a court to "refuse to order the return of the child if it finds that the child objects to being returned and has attained an age and degree of maturity at which it is appropriate to take account of [the child's] views." Convention, art. 13, *Hague Convention Analysis*, 51 Fed. Reg. at 10499.  "The party opposing the child's return must establish the child's maturity by a

preponderance of the evidence." *England*, 234 F.3d at 272 (citing 42 U.S.C. § 11603(e)(2)(A) (1994)[6]). This defense must also be applied narrowly. *Id.* (internal citations omitted).

Moreover, the Convention restricts the age and maturity exception to those cases in which the child actually states an *objection*, and not a mere preference. *Rodriguez v. Yanez*, 817 F.3d 466, 477 (5th Cir. 2016). In *Rodriguez v. Yanez*, the Fifth Circuit held that the trial court erred when it denied the return of a child based on the child's testimony that she "'like[s] living in Texas better' than Mexico," was "'happier . . . in Texas' than in Mexico," but did not object to returning to Mexico. *Id.* at 476. The Fifth Circuit, noting that the Convention requires an explicit *objection*, reasoned as follows:

> This is not a matter of magic words or talismanic language. There is a substantive difference between preferring to live in one of two countries--when living in either country would be acceptable--and affirmatively objecting to returning to one country--when living in that country would be unacceptable. Only an objection is sufficient to trump the Convention's strong presumption in favor of return.

*Id.* at 477. It further warned that to do otherwise would cause the Convention to become a "dead letter." *Id.* at 478 (citing Explanatory Report ¶ 34).

Similarly, the Third Circuit, in *Tsai-Yi Yang v. Fu-Chiang Tsui*, held that a child's preferences and "generalized desire" were insufficient to trigger the age and degree of maturity exception under Article 13. 499 F.3d 259, 279 (3d Cir. 2007). In *Tsai-Yi Yang v. Fu-Chiang Tsui*, Raeann, a ten year old child, stated during an *in camera* examination, that her reasons for wanting to remain in the United States instead of returning to Canada were that she liked her school, she preferred living in a house rather than a small apartment, and she enjoyed having friends and brothers. *Id*. The Third Circuit, in affirming the district court's findings that the child's testimony did not include any particularized objections to returning to Canada, noted that

---

[6] The provisions previously obtained at 42 U.S.C. § 11603(e)(2)(A) have been transferred to 22 U.S.C. § 9003(e)(2)(A).

the child's preferences were insufficient to invoke the age and degree of maturity exception. *Id.* at 279 (citing *Locicero v. Lurashi*, 321 F. Supp.2d 295, 298 (D.P.R. 2004) ("The fact that the [thirteen-year-old] child prefers to remain in Puerto Rico, because he has good grades, has friends and enjoys sports activities and outings, is not enough for this Court to disregard the narrowness of the age and maturity exception to the Convention's rule of mandatory return.")).

In this case, pursuant to the respondent's request and the parties' agreement, the Court interviewed K.T. and L.T. *in camera*. With regard to L.T., the ten year old, the Court found him to be quite candid, but somewhat preoccupied and disinterested—typical of a young boy his age. Nevertheless, he demonstrated clear cognitive abilities and maturity such that he was capable of stating his opinions concerning his life in France. Despite the respondent's claims to the contrary, L.T. stated that he had no objections regarding staying with the petitioner or returning to France.

With respect to K.T., the parties' twelve year old son, the Court found him to be somewhat guarded and soft spoken but still quite capable of stating any objections he might have harbored about returning to France or living with the petitioner. He testified that he enjoyed being with his dad, that his dad never hit him, rarely called him names, except when trying to toughen him up for sports, and that he never saw him mistreat his mom. When asked by the undersigned if he was opposed to returning to France, he stated, "Yes" and "No," merely citing his desire not to return to school in France and be required to speak French, but never reporting any particularized objection. His mere preference in this regard is not enough for the Court to view this as an explicit objection that bears weight on whether he should return to France. *See De Vasconcelos v. De Paula Batista*, No. 4:10-CV-00628, 2011 WL 806096, at *6 (E.D. Tex. Mar. 1, 2011) (citing *England*, 234 F.3d at 272) ("It is not enough that the child has maintained

friendships, prefers her new residence over the country of removal, or enjoys a more stabilized situation to support a finding that the child is mature enough for the Court to take into account her views."). Accordingly, even assuming the Court finds it appropriate to consider the children's views, the respondent has, nonetheless, failed to establish by a preponderance of the evidence that K.T. and L.T. have stated explicit objections to returning to France that merit consideration under the Convention or applicable case law.

### 3. Violation of fundamental principles exception

Pursuant to Article 20, a court may refuse to return a child if the respondent proves, by clear and convincing evidence, that doing so would violate fundamental principles of the requested State relating to the protection of human rights and fundamental freedoms. Convention, art. 20; 22 U.S.C. § 9003(e)(2)(A); *Sabogal v. Velarde*, No. TDC–15–0448, 2015 WL 2452702, at *19 (D. Md. May 20, 2015); *Hazbun Escaf v. Rodriquez*, 200 F. Supp.2d 603, 614 (E.D. Va 2002), *aff'd*, 52 Fed. Appx. 207 (4th Cir. 2002). Article 20 is to be "restrictively interpreted and applied." *Hague Convention Analysis*, 51 Fed. Reg. at 10510. It "is not to be used . . . as a vehicle for litigating custody on the merits or for passing judgment on the political system of the country from which the child was removed." *Id*. "This seldom-cited and somewhat obscure provision, [often referred to as the public policy defense,] was adopted as a compromise between those countries that wanted a public policy exception in the Convention and those that did not." *Hazbun Escaf*, 200 F. Supp.2d at 614 (internal citations omitted). "The defense is to be invoked only on 'the rare occasion that return of a child would utterly shock the conscience of the court or offend all notions of due process.' " *Souratgar v. Lee*, 720 F.3d 96, 108 (2nd Cir. 2013) (quoting *Hague Convention Analysis*, 51 Fed. Reg. at 10510). The extraordinary nature of the public policy defense is further exemplified by the fact that, to date,

no federal court has denied a petition for repatriation based upon this defense. *Souratgar*, 720 F.3d at 108 (citing Fed. Jud. Ctr., *The 1980 Hague Convention on the Civil Aspects of Int'l Child Abduction: A Guide for Judges* 85 (2012)).

Neither party has cited, nor has this Court unearthed, any authority applying this exception to deny a petition for the return of a child. Moreover, the facts of this case do not warrant application of Article 20's public policy exception. Simply put, there is insufficient evidence in the record that establishes by clear and convincing evidence that the defense applies in the case *sub judice*. Thus, the public policy defense is inapplicable here.

### E. Whether the Petitioner Is Entitled to Attorney's Fees and Costs?

The petitioner seeks to recover attorneys' fees and costs necessary for him to recover the children pursuant to 22 U.S.C. § 9007. He has not, however, submitted proof of any such expenditures to date. For cases arising under the Convention, the ICARA provides that "[a]ny court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster homes or other care during the course of the proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate." 22 U.S.C. § 9007(b)(3); *Sealed Appellant*, 394 F.3d at 346; *see also Saldivar v. Rodela*, 894 F. Supp.2d 916, 923 (W.D. Tex. 2012) (quoting *Whallon v. Lynn*, 356 F.3d 138, 140 (1st Cir. 2004)(reasoning that "[t]he respondent has the burden to show that an award of fees or expenses would be 'clearly inappropriate.'")).

The Court determines that the petitioner is entitled to recover his necessary expenses incurred "by or on behalf of the petitioner," including court costs, legal fees, and transportation

costs related to the return of K.T. and L.T. to France. A separate motion for costs of court and attorneys' fees will be entertained.

IV. **CONCLUSION**

The Court's task in this case is very limited. It is not authorized to determine the merits of any custody dispute between the parties, but rather whether K.T. and L.T. were wrongfully removed from their country of habitual residence. Based on the foregoing, this Court hereby determines the following:

1. the petitioner, Damir Tokic, has satisfied his burden to establish that his children, K.T. and L.T., were wrongfully removed from their country of habitual residence in France;

2. the respondent, Jessica Tokic, has failed to prove by clear and convincing evidence that returning K.T. and L.T. to France would pose a grave risk of continued and escalated physical and psychological harm to the children or otherwise submit them to an intolerable situation;

3. the respondent, Jessica Tokic, has failed to satisfy her burden to show by a preponderance of the evidence that K.T. and L.T. have stated explicit objections to returning to France as opposed to merely stating their preferences;

4. the respondent, Jessica Tokic, has failed to satisfy her burden to establish by clear and convincing evidence that returning K.T. and L.T. would violate fundamental principles relating to the protection of human rights and fundamental freedoms;

5. the Verified Petition for the Return of the Children to Petitioner is **GRANTED**. Accordingly, the respondent, Jessica Tokic, is hereby required to promptly return the children, K.T. and L.T., to France, their country of habitual residence, or release them to a court-approved designee to facilitate their travel to France; and

6. the petitioner, Damir Tokic, is entitled to recover certain necessary expenses incurred, including court costs, legal fees and transportation costs related to the return of the children to France. The petitioner shall submit to this Court a motion for fees pursuant to the lodestar method, supported by an affidavit in this regard, within ten (10) days of this Order. The respondent shall have five (5) days thereafter to file any response to the petitioner's motion, indicating why the requested award is "clearly inappropriate."

The Court hereby retains jurisdiction of this matter to determine any appropriate fee award and to enforce repatriation of the children to France.

It is so **ORDERED**.

SIGNED on this 27th day of July, 2016.

_____
Kenneth M. Hoyt
United States District Judge